IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ERNESTO ABORDO, et al,                    No    C   04-4541   VRW

        Plaintiffs,                      ORDER

        v

JOHN E POTTER, United States
Postmaster General,

        Defendant.
_____/

        This case involves claims of employment discrimination and retaliation brought by twenty-eight former "special delivery" mail carriers in the San Francisco branch of the United States Postal Service (USPS). Seven plaintiffs made specific claims of disability discrimination and retaliation. Doc #14 at 16-17. Plaintiffs move for summary judgment on their single remaining claim for retaliation (Doc #62); defendant John Potter (the "Postmaster") cross-moves for summary judgment on plaintiffs' claims for disability discrimination and retaliation. Doc #66. For reasons stated herein, plaintiffs' motion for summary judgment

is DENIED and the Postmaster's cross-motion is GRANTED.  The Postmaster's motion to strike the declarations of plaintiffs' expert witnesses (Doc #79) is, moreover, DENIED.  This order, together with the court's previous order (Doc #78), disposes of plaintiffs' case in its entirety.

I

The factual narrative regarding the USPS's elimination of special delivery mail (SDM) service and the procedural history of plaintiffs' claims is set forth at pages two through eight of the court's order dated August 21, 2006 granting the Postmaster's motion for partial summary judgment on plaintiffs' claims for age discrimination and retaliation.  Doc #78.  Of the twenty-eight plaintiffs in this case, seven also claim disability discrimination and retaliation based on their disabilities.  Doc #14 at 16-18. These seven plaintiffs are Jessie Byrd, Alfred Chircop, Richard Foley, Irving Hacker (deceased), Joseph Smith, Yvonne Smith, and David Spector.  Id at 17.

Jessie Byrd was employed with the USPS as a SDM messenger from 1973 until July 1997.  Doc #41, Ex 10 at 48-49.  Byrd suffered extensive spinal damage in a job-related accident in December 1998 and was placed on limited duty upon his return to work.  Id at 48; Doc #14 at 4.  He also had a knee replaced in 1995.  Id.  Byrd has a ten-pound lifting limitation, works no more than four hours per day and is unable to climb or descend more than a few steps at a time without pain.  Doc #41, Ex 10 at 48.  Upon termination of the SDM unit Byrd was not assigned to the San Francisco processing and distribution center ("P&DC") with the rest of the SDM messengers

2

because he was unable to perform the work required at the P&DC. Doc #66 at 12. Byrd was allowed to remain at the 180 Napoleon facility and assigned to answer telephones. Id; Doc #63, Ex 7 at 663.

Alfred Chircop was employed by the USPS for around twenty-eight years and was a SDM messenger from 1978 until July 1997. Doc #14 at 5; Doc #63, Ex 5 at 160. Chircop has a fifteen-pound lifting limitation and suffers from a host of ailments, including a ruptured Achilles tendon, tendinitis in his elbow, asthma, rotator cuff problems and lupus. Doc #41, Ex 10 at 51. Upon termination of the SDM unit Chircop was reassigned to the P&DC, where he presented his supervisor with a doctor's certificate indicating that he could not perform the work there. Doc #66 at 13. Chircop was intermittently placed at the P&DC and the Embarcadero Postal Center while his supervisor attempted to find a position that would accommodate his disability. Doc #63, Ex 5 at 163-69. On July 25, 1997, Chircop's supervisor verbally informed him that he could find no work for Chircop. Id at 168. Chircop then filed a written request for an accommodation with the postmaster of San Francisco, which was followed by a written response from Chircop's supervisor stating that there were no assignments available and that Chircop could use any sort of leave he had accrued over the years to cover his hours until a position became available or until his medical condition changed. Id at 169. A suitable position never materialized. Doc #66 at 14.

Richard Foley has been an employee of the USPS for over thirty years and was a SDM messenger for ten years. Doc #41, Ex 10 at 53. As a result of an on-the-job accident in 1979, Foley

3

1  fractured two vertebrae and was diagnosed with spondyliothesis.  Id
2  at 53-54.  The injury prohibited Foley from walking more than a few
3  minutes without experiencing leg pain.  Id.  Upon termination of
4  the SDM unit, Foley was reassigned to a mail-sorting position at
5  the P&DC, where he was allowed to use a flat rest bar instead of an
6  elevated rest bar to accommodate his back injury and was excused
7  from doing the "round-up," a work function which required walking
8  that exacerbated his leg pain.  Doc #19, Ex E at 7.  In July of
9  1999 Foley became a window clerk at Pine Street station.  Doc #63,
10 Ex 5 at 267.

11         Irving Hacker, who is now deceased, worked for the USPS
12 from 1970 and was an SDM messenger from 1984 until July 1997.  Doc
13 #41, Ex 10 at 56.  Hacker suffered from kidney failure, diabetes
14 and medical problems stemming from those ailments.  Id at 56-57.
15 Hacker was granted time off to go to dialysis, was accommodated in
16 his requests either to stand or sit and was given light-duty
17 assignments.  Doc #67, Ex A at 484, 487, 505.  The USPS granted
18 every accommodation that Hacker requested.  Id at 489.

19         Joseph Smith was employed by the USPS for thirty-one
20 years and was a SDM messenger for fourteen years.  Doc #41, Ex 10
21 at 58.  Joseph Smith suffers from tendinitis in his hand and
22 chronic back pain.  Id at 59.  Joseph Smith was restricted from
23 lifting more than twenty-five pounds, remaining seated or standing
24 for long periods of time, performing repetitive motions with his
25 right hand or working for more than one and one-half hours per day.
26 Doc #66 at 12-13.  Upon termination of the SDM unit, Joseph Smith
27 was given a job sorting the mail at the P&DC and was not required
28 to work longer than one and one-half hours per day.  Doc #63, Ex 5

**4**

at 197, 199-200.

Yvonne Smith has worked for the USPS for over thirty-three years and was a SDM messenger from 1984 until July 1997. Doc #41, Ex 10 at 62. Yvonne Smith had a back injury, tendinitis in her knees and, prior to 1997, a twenty-pound lifting limitation. Id. Upon termination of the SDM unit, Yvonne Smith was sent to the P&DC where, for three months with full pay, she waited for the USPS to find her work that accommodated her disability. Doc #63, Ex 6 at 441-42. After three months Yvonne Smith was placed in a position answering complaints and helping with express mail; she was permitted to use an orthopedic chair prescribed by her doctor in her work area. Id at 441, 444.

David Spector has worked for the USPS since 1973 and as a SDM messenger from 1987 to 1991 and from 1995 until July 1997. Doc #41, Ex 10 at 64. Spector has a lifting limitation of thirty-five to forty-five pounds, a herniated disk in his lower back and tendinitis in his right shoulder. Id at 64-65. Upon termination of the SDM unit, Spector was assigned to casing mail at the P&DC, but he began to experience problems casing the mail because of his injuries. Doc #67, Ex B at 1024. Spector was subsequently transferred to the loading docks where he directs mail coming into the facility. Id, Ex C at 14.

II

In reviewing a motion for summary judgment, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. "Only disputes over facts that might affect the outcome of the suit

5

under the governing law will properly preclude the entry of summary judgment." <u>Anderson v Liberty Lobby</u>, 477 US 242, 248 (1986). Further, the dispute over a material fact must be "genuine," that is, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." Id. And the burden of establishing the absence of a genuine issue of material fact lies with the moving party. <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting its claim that a genuine issue of material fact exists. <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 US at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id at 249.

The evidence presented by both parties must be admissible. FRCP 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. <u>Thornhill Publishing Co, Inc v GTE Corp</u>, 594 F2d 730, 738 (9th Cir 1979). Hearsay statements in affidavits are inadmissible. <u>Japan Telecom, Inc v Japan Telecom America Inc</u>, 287 F3d 866, 875 n 1 (9th Cir 2004).

//
//

6

III

The Rehabilitation Act incorporates the standard used under the Americans with Disabilities Act (ADA), 42 USC §§ 12101-12213, to determine whether an act of discrimination violates the Rehabilitation Act, 29 USC § 791(g); 29 CFR § 1614.203(b); <u>Coons v Dept of the Treasury</u>, 383 F3d 879, 884 (9th Cir 2004); <u>McLean v Runyon</u>, 222 F3d 1150, 1153 (9th Cir 2000).  To state a prima facie disability discrimination claim under § 501 of the Rehabilitation Act, plaintiffs must show that they:  (1) were otherwise qualified disabled individuals for purposes of the Rehabilitation Act and (2) suffered an adverse employment action because of their disabilities.  <u>Lucero v Hart</u>, 915 F2d 1367, 1372 (9th Cir 1990).  If plaintiffs are able to make out a prima facie case of disability discrimination, then the burden shifts to the defendant who must demonstrate a legitimate nondiscriminatory reason for the adverse employment action.  Id.  If the defendant does so, then the burden shifts back to the plaintiff to demonstrate that the proffered reason is a pretext.  See <u>Smith v Barton</u>, 914 F2d 1330, 1340 (9th Cir 1990).  The ultimate burden lies with the plaintiff.  Id.

A

Plaintiffs have produced no evidence to support their disability discrimination claims.  In response to the Postmaster's cross-motion for summary judgment on their disability discrimination claim (Doc # 66), plaintiffs respond by directing the court to the EEOC Administrative Law Judge's (ALJ's) damage decision for each of the plaintiffs issued in January of 2002.  Doc #71 at 12.  Plaintiffs, however, fail to note that the EEOC Office

7

of Federal Operation (OFO) reversed the administrative judge's decisions because her findings of disability discrimination were not supported by substantial evidence. Doc #78 at 7. Plaintiffs have not raised a genuine issue of material fact. For this reason, defendant's motion for summary judgment on plaintiffs' disability discrimination claim is granted.

### B

The Postmaster does not dispute the "disabled" status of any of the seven plaintiffs under the Rehabilitation Act, but contends that none of the plaintiffs alleging disability discrimination can show that they were reassigned because of their claimed disabilities. Doc #66 at 10.

On July 16, 1997, the San Francisco SDM unit was abolished and all SDM messengers, including plaintiffs, were reassigned. Doc #78 at 6. Plaintiffs claiming disability discrimination do not claim that they were treated any differently from SDM messengers who were not disabled. There is an absence of a genuine issue of material fact because there is no evidence that plaintiffs suffered an adverse employment action because of their disabilities. All SDM jobs were abolished, not just those held by disabled persons. Accordingly, plaintiffs have failed to meet the second prong essential to establishing a prima facie case for disability discrimination. See Lucero, 915 F2d at 1372.

### C

Assuming arguendo that plaintiffs were capable of establishing a prima facie case for their disability claim, the

8

1 court finds that plaintiffs would nevertheless fail under the
2 burden shifting analysis outlined above.  As set forth in the
3 court's order of August 21, 2006, the Postmaster articulated
4 legitimate, nondiscriminatory reasons for reassigning plaintiffs in
5 1997.  Doc #78 at 15-16.  The Postmaster articulated three
6 interrelated, legitimate nondiscriminatory reasons:  that SDM
7 service was abolished nationwide and there were, as a result, no
8 longer any SDM items to deliver; that the SDM unit was inefficient;
9 and that the nationwide postal rules discouraged SDM messengers
10 from delivering express mail.  Id.  Plaintiffs, in turn, have
11 failed to rebut the Postmaster's articulated reasons by showing
12 that they are a mere pretext.  See Id at 16-18.

D

Plaintiffs assert that the Postmaster denied them reasonable accommodations "from July 15, 1997 until September 2000."  See Doc #14 at 18.  Plaintiffs, however, have produced no evidence to support their assertion.  Again, plaintiffs direct the court to the ALJ's damage decisions that were later reversed by the EEOC OFO for lack of substantial evidence.  See Doc #71 at 14; Doc #78 at 7.  Such evidence is insufficient to raise a genuine issue of material fact.

Accordingly, the court grants the Postmaster's cross-motion for summary judgment on plaintiffs' disability discrimination claim.

//
//
//

9

**IV**

The Rehabilitation Act, 29 USC § 701, prohibits retaliation in employment against disabled persons by the federal government, including the USPS.  29 USC §§ 791, 794.  In order to establish a prima facie case of retaliation under the Rehabilitation Act plaintiffs must adduce evidence tending to establish the following elements:  (1) they engaged in a protected activity; (2) they were thereafter subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.  Coons, 383 F3d at 887; Porter v California Dept of Corrections, 419 F3d 885, 894 (9th Cir 2005) (ADA context).  "The plaintiff must present 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'"  Coons, 383 F3d at 887.  In other words, plaintiffs must, in this case, show a connection between their engagement in a protected activity and the adverse employment action.  If plaintiffs establish a prima facie case, the burden of production then shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged action.  Id.  If the employer meets this burden, the plaintiff must show that the articulated reason is pretextual in order to proceed beyond the summary judgment phase.  Id.

**A**

The anti-retaliation provision of the Rehabilitation Act provides that no person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by the Rehabilitation Act.  29 USC § 794(a), (d); 42 USC §

10

12203(a).  Allegations of discrimination which are not included in the plaintiffs' administrative charge may not be considered by a federal court unless the new claims are "like or reasonably related to the allegations contained in the EEOC charge."  BKB v Maui Police Dept, 276 F3d 1091, 1100 (9th Cir 2002).

Plaintiffs allege in their first amended complaint that their reassignment was in retaliation for their participation in the 1991 EEO actions and class arbitration concerning the decentralization of the San Francisco SDM unit.  See order dated August 21, 2006 (Doc #78) at 8.  As this court previously ruled in its order dated August 21, 2006, indirect participation in the class arbitration was not protected activity; only the filing of the 1991 EEO complaints constitutes protected activity.  Id at 11. Of the seven named plaintiffs claiming disability discrimination and retaliation based on disability, only Spector alleged disability discrimination in his EEO complaint and only Hacker alleged retaliation in his administrative charge.  Doc #19, Ex A at 9.  Byrd and Joseph Smith were not parties to the 1991 complaint. Doc #19, Ex E at 4.

In the case arising from the decentralization issue (Black v Henderson, C-99-4806 SBA), in which plaintiffs tried to raise the same claims of discrimination, Judge Armstrong found that plaintiffs who did not explicitly raise disability and retaliation claims in their EEO complaints should not be permitted to proceed on such claims in their federal action.  Doc #19, Ex A at 9-11. Absent a mention of disability discrimination in the EEO complaint, Judge Armstrong reasoned, the EEOC would not investigate the issues and facts necessary to support whether the Postmaster's actions

11

constituted discrimination, so plaintiffs who had not claimed discrimination in their 1991 complaint had failed to exhaust their administrative remedies. Id at 10. The undersigned judge agrees with Judge Armstrong's disposition.

For these reasons, the court finds that the retaliation claims of Byrd and Joseph Smith cannot proceed because they did not participate in any protected activity. Chircop, Foley, and Yvonne Smith's retaliation claims also cannot proceed because they did not allege disability discrimination or retaliation in their 1991 EEO complaints. Accordingly, only Hacker's and Spector's retaliation claims are properly exhausted and ripe for judicial review.

B

The Postmaster does not dispute that plaintiffs' filing of the 1991 EEO complaints constituted protected activity or, for purposes of this summary judgment motion, that an adverse action was taken against plaintiffs. Instead, the Postmaster argues that plaintiffs cannot establish the necessary causal link between the protected activity and the adverse employment action. Doc #66 at 7-9.

In order to establish causation, plaintiffs must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [the adverse employment action] and that but for such activity" they would not have been subjected to the adverse employment action. Villiarimo v Aloha Island Air, Inc, 281 F3d 1054, 1064-65 (9th Cir 2002). Plaintiffs may submit direct or circumstantial evidence of causation. See Manatt v Bank of America, 339 F3d 792, 802 (9th Cir 2003). Causation may be

12

inferred from timing alone "where an adverse employment action follows on the heels of protected activity." Villiarimo, 281 F3d at 1065. But the adverse employment action "must have occurred 'fairly soon after the employee's protected expression.'" Id. For example, in Villiarimo, an eighteen-month lapse between the protected activity and the adverse employment action was too long for a court to infer causation. Id. On the other hand, an intervening period of two or three months can be short enough for a court to infer causation. See Yartzoff v Thomas, 809 F2d 1371, 1376 (9th Cir 1987); Miller v Fairchild Industries, Inc, 797 F2d 727, 731-32 (9th Cir 1986).

In its August 21, 2006 order the court addressed causation, the last element of a prima facie case of retaliation. Doc #78 at 12-15. The court found that too much time had elapsed between the protected activity and the alleged retaliatory action to infer causation. Id. Additionally, the court found that plaintiffs' letter to the USPS expressing their intention to reinstate the EEO action, while almost certainly protected activity, was executed after the Postmaster began the process of eliminating the SDM and, therefore, was inapposite for purposes of determining causation. Id at 14-15. Because the analysis for retaliation under Title VII and the Rehabilitation Act are the same, the same reasoning applies here. There is no causal nexus based on temporal proximity and accordingly, plaintiffs cannot establish a prima facie case.

//
//
//

13

### C

Even assuming <u>arguendo</u> that plaintiffs were able to establish causation and make out a prima facie case, the Postmaster has articulated a legitimate, nondiscriminatory reason for the 1997 reassignment, as noted above and in the court's previous order. See Doc #78 at 15-16. Additionally, plaintiffs have failed to offer evidence that would reasonably support the conclusion that the Postmaster's articulated reason was pretextual. See Id at 16-18.

### V

After considering the declarations of plaintiffs' experts KD Hughes (Doc #74) and Eve Hill (Doc #75), the court finds that neither declaration adds to the record any admissible evidence creating a genuine issue of material fact. Accordingly, the court has not been swayed in its determination as to the final disposition of the case. Granting the Postmaster's motion to strike is, therefore, unnecessary.

### VI

Plaintiffs' motion for summary judgment is DENIED and the Postmaster's cross-motion for summary judgment on plaintiffs' claims for disability discrimination and retaliation is hereby GRANTED. The Postmaster's motion to strike is DENIED.

//
//
//
//

1    The clerk shall enter judgment in favor of the Postmaster
2  and shall close the file.

4    IT IS SO ORDERED.

```
                                    _____
                                    VAUGHN R WALKER
                                    United States District Chief Judge
```